UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION at LEXINGTON

| | |
|---|---|
| NORMAN DAVID SOMERVILLE, | |
| Plaintiff, | Civil Action No. 08-CV-351-KSF |
| vs. | |
| STEPHEN M. DEWALT, ET AL., | **MEMORANDUM OPINION AND ORDER** |
| Defendants. | |

\*\*\*\*   \*\*\*\*   \*\*\*\*

Plaintiff Norman David Somerville ("Somerville") has filed a *pro se* civil rights complaint pursuant to the doctrine announced in *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971) [R. 2] and has paid the filing fee. [R. 5]

The Court screens civil rights complaints pursuant to 28 U.S.C. § 1915A. *McGore v. Wrigglesworth*, 114 F.3d 601, 607-08 (6th Cir. 1997). As Somerville is appearing *pro se*, his complaint is held to less stringent standards than those drafted by attorneys. *Burton v. Jones*, 321 F.3d 569, 573 (6th Cir. 2003); *Hahn v. Star Bank*, 190 F.3d 708, 715 (6th Cir. 1999). During screening, the allegations in his complaint are taken as true and liberally construed in his favor. *Urbina v. Thoms*, 270 F.3d 292, 295 (6th Cir. 2001). But the Court must dismiss a case at any time if it determines the action (a) is frivolous or malicious, or (b) fails to state a claim upon which relief can be granted. 28 U.S.C. § 1915(e)(2).

I.   FACTUAL BACKGROUND

In his Complaint, Somerville alleges that in 2006 he authored a book in which he contended that the right to bear arms guaranteed by the Second Amendment was a right held by individuals, and in which he further advocated the impeachment for treason of certain identified federal judges who viewed the Second Amendment right as collectively held. In June 2007, Somerville sent a copy

1

of a petition seeking the impeachment of those judges to some of the judges named in the petition.

On July 3, 2007, Defendant Meyer, a judicial security officer working for the United States Marshals Office ("USM") in Boise, Idaho, advised staff at FMC-Lexington of the petition. Warden Dewalt immediately placed Somerville in administrative segregation ("SHU") pending an investigation into whether the communication could be considered threatening. During this period, Somerville's visitation and telephone privileges were suspended without a hearing, and his mail was reviewed by members of the BOP's special investigations unit. Somerville remained in the SHU for 23 days, until he was advised on July 26, 2007, that BOP counsel had concluded that his correspondence did not constitute a threat upon the federal judge. At this point Somerville was returned to the general population.

When he was first placed in the SHU, Somerville immediately noticed that the air conditioning was so strong that his cell was extremely cold. When he asked staff about the temperature he was told that there was a problem with the thermostat and was given a very light blanket which provided little additional warmth. Somerville immediately filed an informal grievance regarding the temperature, but received no response. Somerville indicates while the cold temperature seemed to be tolerable at the time, shortly after he was released from the SHU he began to experience strong pain in his feet. Somerville believes that he suffered a mild case of frostbite. Following an examination of his feet by prison medical staff on July 27, 2007, Somerville was relieved of work duties for the next nine days and given a prescription for pain medication.

On August 5, 2007, Somerville returned to normal work duty as a clerk in the law library. However, on August 14, 2007, he was allegedly told by his supervisor that he had been "blackballed." Later that evening he was advised that he had been reassigned to work in the food service area. Somerville immediately filed an Inmate Request to Staff requesting a justification for his transfer, and asked that it be given in writing so that he could pursue an administrative remedy. On August 16, 2007, he received a written response stating that the prison needed food service workers.

Over the next several days, Somerville made repeated inquiries of both BOP staff and other

inmates regarding the reason for his job transfer, and filed additional requests to staff seeking an explanation. Somerville alleges that at least one staff member agreed that Somerville should not have been removed from the library, including one officer whom Somerville indicates stated on August 25, 2007 that Somerville's transfer was a violation of his civil rights.

Somerville indicates that on August 28, 2007, he was called into the office of Lt. Clark, who angrily challenged him on the genuineness of his foot injury, his sending of the impeachment petition to a federal judge, and his efforts to be returned to his job in the prison's law library. Clark allegedly manufactured several grounds to place Somerville back in segregation, before finally deciding to charge Somerville with "encouraging a group demonstration." Somerville was placed in the SHU on that evening pending investigation of that charge. Somerville indicates that several inmates later told him that Clark spent the next two days asking them to provide information implicating Somerville in such conduct. However, two days later Clark advised Somerville that his investigation failed to provide information to support the charge, and that he would be released from the SHU. However, Somerville was not released until September 6, 2007 when his paperwork could be processed after the Labor Day weekend.

Following his release from the SHU, Somerville indicates that he was afraid to pursue filing a grievance regarding the loss of his prison job. However, immediately following his release from the SHU Somerville filed the first of at least six different grievances regarding these events:

1. **Administrative Remedy #468717.** On September 28, 2007, Somerville filed a grievance with the warden seeking an explanation for his job transfer. On October 4, 2007, the warden rejected the grievance as untimely because it was not filed within 20 days of his job transfer. There is no documentation which indicates Somerville pursued this grievance further.

2. **Administrative Remedy # 471972**. On October 22, 2007, Somerville filed a grievance with the warden regarding staff failure to promptly respond to informal requests to staff and rejection of grievance #468717 as untimely. Somerville unsuccessfully pursued this grievance up to and including a final denial by the Central Office on March 3, 2008.

3. **Administrative Remedy # 471568**. On October 23, 2007, Somerville filed

3

a grievance with the warden challenging the Education Department's refusal to accept him as a volunteer in the library and again challenging his job transfer. Somerville unsuccessfully pursued this grievance up to and including a final denial by the Central Office on March 18, 2008.

4. **Administrative Remedy # 474762.** On November 26, 2007, Somerville filed a grievance with the warden challenging his transfer out of the library as retaliation for his expression of his political beliefs. Somerville unsuccessfully pursued this grievance up to and including a final denial by the Central Office on March 19, 2008.

5. **Administrative Remedy # 475349.** On December 7, 2007, Somerville filed a grievance with the warden challenging the delay in receiving a response to his informal request to staff and requesting additional time to file a formal grievance with the warden. Somerville unsuccessfully pursued this grievance up to and including a final denial by the Central Office on April 1, 2008.

6. **Administrative Remedy # 484345.** On February 15, 2008, Somerville filed a grievance with the warden challenging the actions of his unit manager in refusing to return him to the library and in responding to his informal grievances, and the actions of the warden in responding to his formal grievances as retaliation for his exercise of his right to free speech. The warden rejected the grievance as redundant to those already filed regarding the job transfer, as did the regional and national offices. Somerville then resubmitted the same grievance to the warden, which was again rejected by the warden and the regional office. Somerville appealed to the Central Office, which never acknowledged receipt of the grievance.

Somerville filed his Complaint in this action on August 12, 2008. Although the Complaint was post-marked August 21, 2008 and the Court did not receive it for filing until August 25, 2008, Somerville's Complaint is deemed filed on the date it is tendered to prison officials for mailing under the prison-mailbox rule of *Houston v. Lack*, 487 U.S. 266 (1988). In it, Somerville asserts eight causes of action. For purposes of the discussion which follows, the Court will group those claims into the four primary circumstances which gave rise to those claims:

1. Somerville's placement in the SHU from July 3, 2007 to July 26, 2007;
2. Somerville's job reassignment on August 14, 2007;
3. Somerville's placement in the SHU from August 28, 2007 to September 6, 2007; and
4. Handling of Somerville's grievances in late 2007 and early 2008.

The Court will discuss these matters in turn.

## II. DISCUSSION

### A. Somerville's placement in the SHU from July 3, 2007 to July 26, 2007.

Somerville's first claim is that his initial placement in the SHU on July 3, 2007 violated his right to free speech under the First Amendment and was done in retaliation for his sending a letter containing proposed articles of impeachment to a federal judge. Somerville's second claim is that during his stay in the SHU he suffered severe injury to his feet from the cold conditions in violation of his right to be free from "Cruel and Unusual Punishments" under the Eighth Amendment.

Both of these claims are barred by the applicable statute of limitation. Any cause of action for Somerville accrued when he knew or had reason to know of the injury that provided the basis for the claim. *Kelly v. Burks*, 415 F.3d 558, 561 (6th Cir. 2005); *Dixon v. Anderson*, 928 F.2d 212, 215 (6th Cir. 1991) (courts look for the event that should alert a typical lay person to protect his or her rights). The events which gave rise to these claims occurred no later than Somerville's release from the SHU on July 26, 2007, if not at an earlier point in time.

Because Section 1983 does not provide its own statute of limitations, federal courts "borrow" the most analogous statute of limitations in the state where the events giving rise to the claim occurred. *Wilson v. Garcia*, 471 U.S. 261, 276-80 (1985). Because the events complained of occurred in Kentucky, Kentucky law supplies the applicable statute. *Cox v. Treadway*, 75 F.3d 230, 240 (6th Cir. 1996). In Kentucky, the applicable statute to be borrowed for civil rights claims is the one-year statute of limitations for residual tort claims found in KRS 413.140(1)(a). *Collard v. Kentucky Board of Nursing*, 896 F.2d 179, 182 (6th Cir. 1990); *University of Kentucky Bd. of Trustees v. Hayse*, Ky., 782 S.W.2d 609, 613 (1989). Somerville therefore was required to file a complaint asserting his civil rights claims related to these events no later than July 26, 2008. Somerville did not file his Complaint until August 12, 2008, and his claims are therefore time-barred.

In addition, Somerville failed to properly exhaust his administrative remedies with respect to these claims, and they are therefore conclusively barred. Federal law requires a prisoner challenging prison conditions pursuant to 42 U.S.C. § 1983, *Bivens*, or other federal law to exhaust

all available administrative remedies before filing suit in federal court. 42 U.S.C. § 1997e(a); *Porter v. Nussle*, 534 U.S. 516, 532 (2002). The prisoner must comply with all procedural rules in the grievance process, including meeting all applicable filing deadlines. *Woodford v. Ngo*, 126 S. Ct. 2378, 2387-88 (2006). Because Section 1997e(a)'s exhaustion requirement is mandatory, claims that are not properly exhausted are conclusively barred. *Id.* at 2382.

BOP regulations require an inmate to first attempt to resolve an issue or concern informally by filing an Inmate Request to Staff (Form BP 8½). 28 C.F.R. § 542.13(a). Efforts to informally resolve a complaint must end, and the inmate must initiate a formal grievance by filing a Form BP-229 with the warden, within 20 days after the events complained of. 28 C.F.R. § 542.14(a). Somerville has provided extensive documentation of his efforts to administratively exhaust his various claims, but none of the documents indicate that he filed a BP-229 with the warden regarding these claims on or before the August 15, 2007 deadline to do so. The first mention of his complaints regarding cold temperatures in his cell appears in a BP-230 filed with the Regional Office on November 20, 2007 in Administrative Remedy #471568. Somerville complained only incidentally of his July placement in the SHU in later-filed grievances in which he challenged his job transfer as retaliatory. These complaints were neither timely raised nor properly filed in the first instance with the warden. Having failed to comply with the procedural requirements of the BOP grievance process, Somerville's claims are barred for lack of proper exhaustion. *Ngo*, 126 S.Ct. at 2382.

**B.  Somerville's job reassignment on August 14, 2007**.

Somerville's third, fourth and fifth claims relate to his transfer from a job in the prison library to food service on August 14, 2007, and the subsequent refusal of BOP staff to return him to his position in the prison library. Somerville challenges these actions as retaliation for the exercise of his First Amendment rights and a violation of his Due Process rights under the Fifth Amendment.

Somerville failed to timely pursue his administrative remedies with respect to any of these claims. Somerville was initially removed from his position in the prison library on August 14, 2007, but did not file a formal grievance with the warden regarding the issue until September 28, 2007, at

the earliest.[1]  This grievance was filed well past the 20-day period permitted by 28 C.F.R. § 542.14(a). Somerville notes that he was in the SHU from August 28, 2007 to September 6, 2007, when the 20-day period expired.  However, this detention did not prevent him from filing a grievance before he was placed in the SHU, nor does he offer any justification for his failure to file a formal grievance for more than 20 days after his release from the SHU.  Any claim regarding his August 14, 2007 job transfer is therefore barred by his failure to properly exhaust this claim.  *Ngo*, 126 S.Ct. at 2382.  The Court also notes that a prisoner lacks any property interest in a particular prison job protectible under the Due Process Clause.  *Newsom v. Norris*, 888 F.2d 371, 374 (6th Cir. 1989); *Martin v. O'Brien*, 2006 WL 3488742, **2 (6th Cir. 2006).

In his fifth claim, Somerville challenges the refusal of BOP staff in February 2008 to return him to his position in the library as a "refusal to remove retaliatory sanctions," and alleges that their refusal to consider him for any other prison job constituted retaliation for his expression of his First Amendment rights.  With respect to the first allegation, the decision of BOP staff in February 2008 to merely adhere to their prior determination in August 2007 to transfer him to a new prison job does not constitute new grievable conduct to restart the running of administrative deadlines.  To so hold would render the deadline for filing an administrative grievance meaningless as a practical matter.  When BOP staff indicated that they intended to keep Somerville in his present prison job for an indefinite period of time, they were within their rights to do so.  *Carter v. Tucker*, 2003 WL 21518730, **2 (6th Cir. 2003); *Karacsonyi v. Radloff*, 885 F. Supp. 368 (N.D.N.Y 1995).

With respect to the second allegation, a BOP staff member's isolated reference to that petition as evidencing an "anti-government" view is far too slender a thread upon which to infer a retaliatory animus, particularly where Somerville had himself repeatedly injected the issue into numerous grievances regarding his job transfer.  *Garrett v. Angelone*, 940 F.Supp. 933, 944 (W.D. Va.

---

[1] In his Form BP-230 filed in Administrative Remedy #471972, Somerville contended that his September 28, 2007, grievance in Administrative Remedy #468717 was not a challenge to his job transfer, but sought only an explanation for the transfer.

1996) (refusing to infer retaliatory motive based solely on bare assertions of retaliation or the mere proximity of events), *aff'd*, 107 F.3d 865 (4th Cir. 1997); *Abrams v. Walker*, 307 F.3d 650, 653 (7th Cir. 2000) (prisoner must demonstrate that prison official's actions would not have occurred "but for" his grievance by providing "definite, competent evidence" and not "mere speculation" or "unreasonable inferences").

  C. **Somerville's placement in the SHU from August 28, 2007 to September 6, 2007.**

Somerville's seventh claim alleges that BOP staff returned him to the SHU on August 28, 2007, in retaliation for grievances he filed regarding his prison job. However, Somerville did not file any administrative grievance regarding his second placement in the SHU, and this claim is therefore unexhausted. Because the time for filing a grievance regarding this claim has long since come and gone, this claim is conclusively barred. *Ngo*, 126 S.Ct. at 2382.

While Somerville alleges that he did not file a grievance regarding this claim because he feared retaliation, this claim is thoroughly refuted by the numerous grievances Somerville filed over the next six months regarding his job transfer and the processing of grievances, in which Somerville aggressively pressed his claims of staff misconduct. Because there is no evidence that Somerville was deterred from filing grievances, his failure to do so with respect to this claim renders it unexhausted and therefore barred. *Williams v. Lewis*, 2005 WL 1829698, **5 (E.D. Cal. 2005) (failure to exhaust not excused by alleged fear of retaliation where prisoner filed 5 grievances immediately following incident).

  D. **Handling of Somerville's grievances in late 2007 and early 2008.**

Somerville's sixth and eighth claims allege that BOP staff violated his First Amendment right of access to the courts by making false and misleading statements in their responses to his grievances and by rejecting or failing to timely respond to his grievances. These claims fail as a matter of law. While Somerville may disagree with the facts asserted by BOP staff in their responses to his informal and formal grievances, such assertions in no way impeded his ability to challenge the propriety of their actions in legal proceedings. *Bridges v. Gilbert*, 557 F.3d 541, 555 (7th Cir. 2009) (prison

8

officials' alleged misconduct by improperly rejecting inmate's grievances or providing misleading information in response fails to state claim for denial of access to courts where plaintiff filed civil rights action regarding events described in grievances) (*citing Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996)).

Nor does the Court's determination that Somerville failed to timely or properly exhaust many of his claims undermine this conclusion, as such failure was the result of Somerville's apparent misunderstanding of the grievance process, not the substance of prison officials' responses to his grievances. Somerville claims that he was unable to timely file a BP-229 with the warden on some claims because of staff delay in responding to his informal grievances, and that allegedly false or misleading statements in grievances responses undermined the integrity of the grievance process as a mechanism to resolve prisoner complaints.

With respect to the former claim, as Administrator Harrell Watts correctly noted in denying Administrative Remedy #471972, "Inmate Request to Staff forms are not part of the Administrative Remedy Program and do not extend the filing deadline." While the prisoner must make an attempt to resolve the issue informally before filing a formal grievance, 28 C.F.R. § 542.13(a), the deadline for filing a Form BP-229 with the warden is 20 days after the events complained of, regardless of the outcome of any such attempts. 28 C.F.R. § 542.14(a); *see also Martinez v. Williams*, 186 F.Supp.2d 353, 357 (S.D.N.Y. 2002) (inmate who allegedly received no response to grievance "could have and should have appealed the grievance in accordance with grievance procedures"). With respect to the latter claim, a prisoner simply lacks any freestanding interest in the functioning of the grievance process or an agency's adherence to its own regulations that is protected by the Due Process Clause. *Hovater v. Robinson*, 1 F.3d 1063, 1068 n.4 (10th Cir. 1993) (prison official's "failure to adhere to administrative regulations does not equate a constitutional violation."). Somerville's claims therefore fail as a matter of law.

III.  CONCLUSION

Accordingly, **IT IS ORDERED** that:

1. Somerville's Motion for Service of Summons and Complaint [R. 11] and Motion to Expedite [R. 12] are **DENIED.**

2. Somerville's Complaint and Amended Complaint [R. 2, 9] are **DISMISSED WITH PREJUDICE.**

3. An appropriate Judgment will be entered contemporaneously herewith.

This 19th day of May, 2009.

Signed By:
*Karl S. Forester* KSF
United States Senior Judge